OPINION OF THE COURT
Gloria Goldstein, J.
Defendant moves to dismiss the indictment on the grounds that the evidence before the Grand Jury was legally insufficient to establish the offenses as charged, and further, that the Grand Jury proceedings were legally defective (CPL 210.20 [1] [c]; 210.35 [5]).
*398 Defendant is charged with one count of offering a false instrument for filing in the first degree, two counts of Election Law violations under section 17-122 (7), one count of criminal possession of a forged instrument in the second degree, and one count of conspiracy in the fifth degree.
These charges are based on defendant’s alleged participation in the procurement and submission of fraudulent nominating petitions in a primary election held in the 51st Assembly District. Specifically, it is alleged that defendant, acting on behalf of a candidate for the Office of State Committeeman in a 51st Assembly District primary, orchestrated the preparation and filing of certain petitions, which petitions contained forged signatures of registered voters and false statements of subscribing witnesses.
Presentation to the Grand Jury was made by a Special Prosecutor appointed pursuant to section 701 of the County Law.
The first witness called was an attorney who was presented as an Election Law expert, ostensibly for the purpose of providing background information to facilitate the jurors’ understanding of the terminology and requirements of Election Law. A review of the minutes, however, reveals that this witness had been involved in the same election dispute which is presently the subject of the indictment before the court. This attorney, moreover, had been retained by the incumbent candidate who was opposing defendant’s candidate. This attorney-witness filed the objections and instituted the civil proceedings challenging those petitions which are in issue in the case at bar.
In the court’s view, it was ill-advised to have utilized an "expert witness” who played a prior role, as an adversary, in the same case, having disputed those same issues which were the subject of the Grand Jury’s inquiry.
The potential for prejudice was realized when the witness— an active participant in the underlying Election Law litigation —was asked by the prosecutor to relate irrelevant and inadmissible information concerning those proceedings.
Incredibly, the witness was permitted to essentially reiterate his opening statements made by him in the civil action, outlining each of his allegations of fraud, and setting forth what he "intended to prove”.
Allegations of "substantial fraud”, and a delineation of "three categories of fraud” were repeated, in great detail, for *399 the grand jurors. The prosecutor culminated this testimony by eliciting that those allegations as made in the opening statements went unchallenged, that no witnesses were ever called to rebut them, and that the petitions were ultimately withdrawn by the candidate on the eve of trial.
Clearly, these prior allegations made in the civil proceeding constituted extraneous and entirely inadmissible evidence which should never have been presented to the Grand Jury.
Not only were the allegations rank hearsay, but their admission created a danger that the grand jurors would improperly draw adverse inferences from the fact that they were allegedly unchallenged in the civil proceeding (People v Conrow, 200 NY 356). The candidate’s withdrawal of his petitions in the civil proceeding, moreover, may have been erroneously viewed as proof of the crimes charged in this criminal proceeding (People v Randolph, 46 AD2d 683; People v Colascione, 22 NY2d 65; People v Jackson, 18 NY2d 516, 519; People v Pugh, 107 AD2d 521).
The fact that the candidate withdrew his nominating petitions immediately after the allegations were made did not warrant the admission of the substance of the allegations under any theory of evidence, including "consciousness of guilt” or "state of mind” exceptions to the hearsay rule (People v Brabham, 77 AD2d 626; People v Garcia, 76 AD2d 867; People v Minor, 69 NY2d 779; Richardson, Evidence § 205, at 181 [Prince 10th ed]). The withdrawal of petitions by the candidate was irrelevant to defendant’s state of mind, and it was defendant’s state of mind, not the candidate’s, which was in issue. To the extent that the prosecutor vaguely sought to impute or project consciousness of guilt onto defendant based on the candidate’s actions, these efforts were legally inappropriate (People v Shilitano, 218 NY 161; People v Buzzi, 238 NY 390; People v Sharp, 107 NY 427).
The minutes are further replete with additional and diverse errors and improprieties.
Allegations of wholly unrelated criminal acts by defendant were presented to the Grand Jury without any limiting instructions (People v Baez, 118 AD2d 863).
Witnesses were permitted to testify in conclusory fashion on critical issues and without any curative instructions. Statements such as "from just looking at them, I realized that his petitions were basically fraudulent”, were permitted without comment. The witness drawing this conclusion was never *400 qualified as an expert; more importantly, the conclusion itself improperly addressed the ultimate factual issue — an issue to be determined solely by the Grand Jury (People v Rivera, 131 AD2d 518; People v Maxwell, 116 AD2d 667, 668).
Throughout the proceedings, witnesses were repeatedly permitted to use the pronouns "they” and "we” when referring to inculpatory statements and criminal acts. No attempt was ever made by the prosecutor to clarify what acts, if any, were directly attributable to this defendant (Dougherty v City of New York, 267 App Div 828, affd 295 NY 786; People v Torres, 57 AD2d 561; Fisch, New York Evidence § 758).
One witness testified that, "to the best of her knowledge”, the signatures found on a number of nominating petitions were not collected by the subscribing witnesses. The basis for this knowledge, if any such basis existed, other than hearsay, was never provided (People v Lopez, 79 NY2d 402, 403).
Leading questions were used extensively during the course of the presentation. Virtually every witness was asked a leading question in attempting to designate defendant as "Campaign Manager” responsible for the petitions submitted (People v Slover, 232 NY 264; People v Mudd, 184 AD2d 388; Fisch, New York Evidence § 331).
On at least one occasion, the prosecutor impermissibly sought to draw an adverse inference against defendant from a witness’ prior silence taken under advice of counsel (People v Dawson, 50 NY2d 311).
Hearsay statements made by individuals allegedly involved in the subject crimes were allowed into evidence without any predicate showing of a prima facie case of conspiracy as required under the coconspirator’s exception to the hearsay rule (People v Halpin, 71 AD2d 659, lv denied 48 NY2d 716; People v Salko, 47 NY2d 230). Indeed, throughout the presentation, witnesses were freely permitted to relate hearsay conversations inculpating defendant. When a particular witness attempted to offer hearsay of an exculpatory nature, however, she was scrupulously cut off in midsentence and admonished, "You can’t say what she said to you” (see, People v Pelchat, 62 NY2d 97; People v Isla, 96 AD2d 789).
When presenting a case to a Grand Jury, the prosecutor has the obligation and authority to rule on evidentiary matters (CPL 190.30 [6]).
The rules of evidence applicable to criminal trials generally apply to Grand Jury proceedings (CPL 190.30 [1]) and the *401 prosecutor must properly instruct the Grand Jury with respect to the significance, legal effect and evaluation of evidence (CPL 190.30 [7]).*
Although any one of the errors cited in this case, considered individually, might not per se "impair the integrity of the proceedings” as to require dismissal of the indictment, the cumulative weight of the errors and improprieties cannot be ignored.
The court finds that the integrity of the proceedings was impaired and the defendant prejudiced (CPL 210.20, 210.35).
The indictment is dismissed.

 The prosecutor, apparently recognizing the impropriety of the extensive testimony received regarding the civil proceeding, did attempt a curative instruction. The instruction, however, was given belatedly — over two weeks after the testimony had been heard — and was, in any event, insufficient to overcome the transgression.